## 12053.  ROWLAND COMPANY *v.* KELL COMPANY.

1. Where a vendee breaches his contract of purchase, section 4131 of the Civil Code (1910) gives to the vendor the choice of one of three methods of determining the amount of his damages resulting from the breach: (1) retention of the goods and recovery of the difference between the contract price and the market price at the time and place of delivery; (2) sale of the goods as agent for the vendee, and recovery of the difference between the contract price and the price obtained on resale; (3) the vendor may store or retain the property for the vendee and sue him for the entire price. These methods of procedure are extra-

judicial, and if the seller adopts one of them it excludes his right to the others.   But the one which is binding upon him is the one actually adopted by him before suit, and if in his suit to recover damages for breach of the contract a method of procedure is alleged in the petition as the one which he adopted for the purpose of determining the amount of his damages, which was, in fact, not the one adopted and put into effect before the filing of the suit, he can, by an amendment, add to his petition the correct method of procedure which he had elected and by which he had determined the amount of the damages.

2. Where a seller brings a suit under section 4131 of the Civil Code of 1910 for a breach of the purchaser's contract, in refusing to take and pay for goods purchased, and seeks to recover the difference between the contract price and the market price at the time and place of delivery, and where on the trial the evidence shows that before the suit was brought the seller had sold the property in question as agent for the vendee, after giving him the required notice, he may amend his petition by setting out the method of procedure which he had adopted for the purpose of determining the amount of his damages, so as to make the allegations of the petition conform to the facts.   The amendment to the petition in this case did not add a new and distinct cause of action, but simply asked for the application of a different statutory measure of relief than the one stated in the petition, and thus conformed to the one which, prior to the suit, the vendor had elected for the purpose of determining the damages.   The vendor's cause of action was the vendee's breach of contract, and the only purpose of the amendment was to prevent a variance between the allegata and probata as to the measure of damages which the plaintiff was entitled to claim under his extrajudicial election of remedies before the filing of the suit. To avoid a variance of this character is not the least important of the offices of an amendment.

DECIDED JUNE 6, 1921.

Action on contract; from Clarke superior court — Judge Cobb. October 26, 1920.

*Green & Michael,* for plaintiff in error.

*E. R. Clarkson, Shackelford & Meadow,* contra.

HILL, J.   The suit as originally brought was for damages for an alleged breach by the vendee of a contract of purchase.   The seller, proceeding under section 4131 of the Civil Code (1910), asked for damages under the 'first method of procedure as prescribed by that section, for the amount of the difference between the contract price and the market price of the goods at the time and place for delivery.   The evidence disclosed that after the alleged breach by the vendee, the seller had not in fact adopted this method of determining the amount of his damages, but had pursued for this purpose the second mode of procedure provided in the statute.   The defendant thereupon, at the conclusion of the plaintiff's evidence, moved for a nonsuit, and this motion was met by an amendment to the petition, setting out allegations on the

question of damages resulting from the breach of the contract, so as to conform to the evidence. This amendment was allowed by the court, over objection, and, a verdict having been returned for the plaintiff, the question whether the amendment was properly allowed is now before this court for decision. The plaintiff in error insists that such an amendment is improper, in that it set out a new and distinct cause of action, and for the further reason that, the plaintiff having elected its remedy when the suit was filed, it was precluded from seeking the remedy set out in the amendment.

The trend of modern legislation, as well as of decisions of courts of last resort, has been to get away from technical rules of pleading which tend to confuse rather than to simplify the issues, and to eliminate as far as possible all merely technical objections to the amendment of pleadings; and in this State the right of the plaintiff to amend his declaration is practically unlimited, so long as he adheres to the original cause of action and introduce no new party. Civil Code (1910), §§ 5682, 5683. Nothing in the range of pleading is more liberal or broader than the rules stated in § 5682, supra: "A petition showing a plaintiff and a defendant, and setting out sufficient to indicate and specify some particular fact or transaction as a cause of action, is enough to amend by. The jurisdiction of the court may be shown, and the details and circumstances of the particular transaction may be amplified and varied by amendment. If the declaration omit to allege facts essential to raise the duty or obligation involved in the cause of action which was evidently originally intended to be declared upon, the omitted fact may be supplied by amendment." The Supreme Court of this State has in so many elaborate opinions interpreted this section and the following one that it would seem now to be a matter of little difficulty to decide when a proposed amendment to a petition is legally permissible. A few of these decisions will be cited further on in this opinion, but it seems to us that a proper construction and application of the sections of the code above referred to would be sufficient for determining the question.

Bearing in mind the fundamental statutory rule of amendment, which is practically unrestricted except that no new and distinct cause of action or new and distinct parties can be

allowed unless expressly provided for by law, the first question to be determined is, what is the cause of action as set out in the petition as originally filed in the present case? A brief and clear definition of " cause of action " is as follows: " A cause of action may be said to consist of the right belonging to the plaintiff, and some wrongful act or omission done by the defendant by which that right has been violated." 1 Words & Phrases (1st ed.), 1015. In other words, the cause of action consists of two elements: the right of the plaintiff, and the wrongful act of commission or omission by the defendant. In the present case the cause of action set out in the original petition was the plaintiff's right to have the contract of purchase complied with, and the defendant's violation of that right in refusing to carry out his contract; in other words, it was the breach by the defendant of its contract resulting in the right of the plaintiff to recover damages proximately resulting from that breach. In such cases section 4131 of the Civil Code (1910) gives to the plaintiff three remedies for the purpose of determining the amount of his damages for the breach of the contract. The original petition alleged that the remedy which had been elected by the plaintiff before suit was the first remedy allowed by this section of the code, and by compliance with that section a definite sum of damages was claimed. No contest was made as to the breach of the contract, and apparently no question was made as to the amount of the resulting damages, but when the evidence disclosed that the plaintiff had not as a matter of fact elected the first remedy prescribed by the statute, but had elected and fully complied with the second remedy prescribed by the statute, both methods of procedure resulting in the same amount of damages claimed, an amendment was offered by the plaintiff and allowed by the court, setting out the facts as shown by the evidence in reference to the plaintiff's election of the remedy for determining the amount of the damages resulting from the breach. No effort was made to amend the allegations of the petition so far as they referred to the cause of action. The amendment was confined simply to a change of the allegations of the petition on the subject of the remedy, in order to make that part of the petition speak the truth. It has been so frequently held by the Supreme Court of this State and courts of other States and said

by text-writers that an amendment asking for the application of new or different remedies is allowable that it has now become an elementary principle of law. Probably the clearest and most exhaustive expositions of the law on this point in the decisions in this State are contained in the opinion of Chief Justice Bleckley in the *Ellison* case, 87 *Ga.* 699 (13 S. E. 809), from which the code section quoted above was codified, and the opinion of Chief Justice Simmons in *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (48 S. E. 318). In the latter opinion the learned jurist so clearly and fully discusses the question as to what is a new cause of action, and the discussion and definition there given have so fully met the approval of the courts, that the rule there set out, it seems to us, should be conclusive on the question now under consideration. " So long as a plaintiff pleads but one wrong, he does not set up more than one cause of action. . . So long as the facts added by the amendment, however different they may be from those alleged in the original petition, show substantially the same wrong in respect to the same transaction, the amendment is not objectionable as adding a new and distinct cause of action."

In the present case the seller's cause of action arose upon the violation of the purchaser's contract to take and pay for the goods purchased. The remedy for this wrong, while it grew out of the violation of the contract, was not a part of the cause of action, although the sequence thereof. The amendment asks only that the measure of damages which had been elected as the method of procedure before the suit was filed by the plaintiff, and by which election the plaintiff was bound, should be applied as arising from the cause of action. It has been frequently held that a different measure of damages may be added by amendment. *St. John* v. *Leyden,* 111 *Ga.* 152 (36 S. E. 610). In the case here cited the petition claimed as the measure of damages the *value of the property* sued for. The amendment which was allowed and approved by the court changed the measure of damages to the *purchase price* of the property. The value of the property and the purchase price of the property may have been different sums. Here the difference in the market price and the contract price, and the difference in the price on resale was exactly the same amount, but this is immaterial, as the measure of damages was

different in both cases. In *Jordan* v. *Downs,* 118 *Ga.* 544 (45 S. E. 439), it was held: "Where an equitable petition is filed by wards for the purpose of tracing trust funds which their guardian wrongfully invested in certain land, and the prayer of the petition is for the recovery of the land, an amendment striking this prayer and substituting therefor a prayer for an accounting and for a money judgment with a special lien on the land does not set up a new and distinct cause of action." Chief Justice Simmons, in the opinion, said: "The cause of action was the wrongful investment of the plaintiffs' money in the land. The amendment did not affect this, but was simply a prayer for another form of relief or recovery thereon. The first prayer was for the recovery of the land itself. That was stricken, and in its place the amendment substituted a prayer for the recovery of the money. The only change was to indicate an election to take a money verdict rather than the land. This did not affect the defendant's defenses or constitute a new cause of action." See also the able opinion of Justice Cobb in *McCandless* v. *Inland Acid Co.,* 115 *Ga.* 868 (42 S. E. 449). In *Walker* v. *Berger,* 148 *Ga.* 326 (96 S. E. 627), it was held that "Striking the allegation that the plaintiff was damaged in a specified sum and adding a prayer for accounting did not set up a new and distinct cause of action;" and the court quoted with approval the statement of Chief Justice Simmons in the *Anglin* case, supra: "No new and distinct cause of action is added to a petition by an amendment which contains additional matter descriptive of the same wrong pleaded in the original petition, and which does not plead any other or different wrong." See also, to the same effect, the opinion of Judge Lumpkin, in the early case of *Maxwell* v. *Harrison,* 8 *Ga.* 61 (52 Am. Dec. 385). In *Harris* v. *Central Railroad,* 78 *Ga.* 525 (3 S. E. 355), Chief Justice Bleckley said: "The cause of action was the homicide of the plaintiff's husband by the negligence of the defendant. In setting out that negligence it was described in one way in the original declaration, in another by the first amendment, and in another by the second amendment. But it was all the same cause of action." Other decisions to the same effect might be cited, but it would be simply a "piling of Ossa upon Pelion," and we must conclude from those cited that the principle is perfectly well settled, in this State at least, that

so long as the plaintiff adheres to his cause of action as set forth in the original petition — the same matter of controversy, the same substantive transaction — he is at liberty to add as many prayers for relief, containing different measures of damages, as will best correspond with the nature of his complaint and with the proof or the merits of his case.

Applying these principles to the facts of the present case, we think it perfectly clear that the amendment did not set out a new cause of action, but related to the same transaction, to the same controversy, the one breach of the contract by the defendant, and was confined simply to the question of remedy or the measure of damages resulting from the breach, controversy, or cause of action. As was said by counsel for the defendant in error, in their most excellent brief, " The breach of contract by defendant was clearly set out in the petition. This was the cause of action. Plaintiff alleged it had retained the goods and sued for the difference between the market price at the time and place of delivery and the contract price. The evidence showed that it had not done this, but had sold the goods after due notice, for the account of defendant. The *wrong* was the same. The *contract* was the same. The *breach* was the same. As a matter of fact the damages were the same to the cent, though this is immaterial. The only thing the amendment did was to adjust the remedy prayed to the facts established by the evidence. To say that this was a new cause of action is to fail to differentiate between *right* and *remedy* — *cause of action* and *relief*."

Another reason urged why the amendment should not have been allowed is the contention that the plaintiff in filing its suit made an election of remedies, and was bound by this election. It is true that when the contract of purchase was broken by the vendee the seller had the option to elect between the three statutory remedies, and, as a matter of fact, it did elect. It elected the second remedy and fully complied with the statutory requirements in that connection. And it is true also that after the seller had made this election and had acted according to requirements of the code in determining the amount of the damages, this was its only remedy, and when the suit was filed it had this only remedy, but erroneously claimed a remedy to which it was not entitled. The election of its remedy, by which it was bound, was made before

8

the filing of its suit. The remedy was applicable to the extra-judicial methods of procedure for determination of the damages resulting from the breach of the contract. A mere mistake which may have been made in not properly setting out the plaintiff's previous election of remedies and the only one it had under the statute at the time the suit was filed did not have the effect of destroying its election of remedies or of preventing it from setting out the true election which it had made previous to the filing of its suit. In other words, an erroneous measure of damages stated in the original petition could not extinguish its right under the remedy which the statute gave it for determining the question of damages, and which it had elected. It had the statutory right to elect the remedy, and this election could not be qualified and set aside by a mere erroneous statement in the petition as to the remedy elected. In other words, an election of remedies was not made by the filing of the suit; although we do not concede that even in such case the plaintiff is always bound by the election as then indicated, and that such election of remedies extinguishes all other remedies or prevents the setting up of other remedies by way of amendment, but the election was of the extrajudicial procedure given by the statute for the determination of the measure of damages. "There is a difference between an election of remedies and a mistake of remedy, and the law has not gone so far as to deprive parties of meritorious claims merely because of attempts to collect them by inappropriate actions, upon which recovery could not be had." Sullivan *v.* Ross, 113 Mich. 311 (76 N. W. 309); 9 R. C. L. 957; Water, Light & Gas Co. *v.* City of Hutchinson, 160 Fed. 41 (90 C. C. A. 547, 19 L. R. A. (N. S.) 219).

We do not deem it necessary to discuss the question further. After a careful consideration of the authorities a majority of the court is of the opinion that the amendment did not add a new and distinct cause of action, but simply related to the measure of damages growing out of the cause of action; that this amendment was not objectionable because it asked for different relief from that sought in the original petition; that an amendment which only changes the measure of damages to conform to the facts, and is applicable to the cause of action as set out in the original petition, is always permissible; that under the evi-

dence the only remedy available to the plaintiff at the time of the filing of the suit was that which it had previously elected under the statute; and that the setting out of a remedy in the original petition, to which the plaintiff was not entitled, did not bind the plaintiff, and that the amendment correcting this erroneous statement was not the introduction of any new cause of action, did not deprive the defendant of any right, and its allowance by the learned trial judge was clearly in line with modern legislation, judicial decisions, and legal dicta.

*Judgment affirmed.. Stephens, J., concurs. Jenkins P. J., dissents.*

JENKINS, P. J., dissenting. It is with a good deal of reluctance that the writer ventures to dissent from the conclusion which his colleagues have announced in this case. Not only is he impressed with the line of reasoning offered in support of the rule laid down, but he recognizes that the view here presented may seem on its face to run counter to the general trend and current of modern authority. Still, we are dealing with fundamentals, and however broad and liberal the right of amendment has grown to be, there yet remain three absolute limitations upon the legal exercise of this valuable right and privilege. There must be enough in the pleadings to amend by; new and distinct parties must not be added; nor can a different cause of action be substituted. Plain and simple as these rules would seem to be, it is nevertheless universally recognized that the basic and most elementary principles of the law ofttimes present perplexing problems in their proper application. In the instant case no question arises as to a change of parties. It is also manifest that the original petition correctly set forth a cause of action, full, adequate, and complete in every detail. Consequently, there can be no question that it carried enough to amend by, so long as the ground of complaint remained the same. Not only were the original allegations of the petition perfect and complete, not only did the averments correctly set forth all the facts, but they set forth the only facts that could possibly support "the cause of action which was evidently originally intended to be declared upon." Civil Code (1910), § 5682. How then can that be added to which is already complete? How can errors and inaccuracies be eliminated when none do or can exist? If the original petition was perfect in that

it correctly set forth all the facts, and the only facts, which could support the cause of action actually sued on, then the statement of the ground of complaint could not possibly be aided by amendment; and if materially altered, it would seem necessarily to follow that a substitution of the cause itself had been effected. The plaintiff's case broke down, not because a perfect cause of action was not declared upon, and the only appropriate remedy prayed for, but because it was unable to prove the ground of its complaint. This was true because the cause of action which had been alleged did not exist. But it is said by my colleagues that one of the most important offices of the amendment is to avoid a variance between the allegata and probata. True, but this can be done only in so far as the amendment seeks to set forth " additional matter descriptive of the same wrong pleaded in the original petition, and which does not plead any other or different wrong." *Walker* v. *Berger,* 148 *Ga.* 326, 331 (96 S. E. 627).

In the syllabus of the majority opinion it is stated that the " vendor's cause of action was the vendee's breach of contract, and the only purpose of the amendment was to prevent a variance between the allegata and probata as to the measure of damages which the plaintiff was entitled to claim under his extrajudicial election of remedies before the filing of the suit." If this statement of what constituted both the original and the amended ground of complaint, and as to the purpose and effect of the amendment, be correct, the conclusion is sound and must follow. It presupposes that the breach by the vendee of its original contract of purchase constitutes the only wrong complained of both under the original petition and under the amendment. The case of *City of Columbus* v. *Anglin,* (120 *Ga.* 785, 48 S. E. 318), is quoted from as follows: " So long as a plaintiff pleads but one wrong, he does not set up more than one cause of action. . . . So long as the facts added by the amendment, however different they may be from those alleged in the original petition, show substantially the same wrong in respect to the same transaction, the amendment is not objectionable as adding a new and distinct cause of action." It is the opinion of the writer that, while the original suit is plainly based upon the breach by the vendee of its original contract of purchase, the wrong complained of being its failure to take and pay for the goods as agreed, the amend-

ment is not based upon this " same wrong in respect to the same transaction." The new wrong, it is true, may relate to the same transaction, and the new wrong may be said to have arisen out of, or by virtue of, the original breach of the private agreement; but the ground of complaint set up by the amendment is essentially separate and distinct. It consists solely in the failure of the defendant to comply with a new and distinct obligation — one which it in fact has never in any wise agreed to perform, but which the statute law has imposed upon the vendee as a conquence of the vendor's mode of procedure taken thereunder. Under the amendment, the failure of the defendant to pay the difference between the contract price of the goods and the price on resale is the direct cause of complaint, and the wrong thus complained of is new, separate, and distinct. Neither the contract nor the common law gave to the plaintiff the rights or the remedy which he now insists on, nor did they impose upon the defendant the obligation which the plaintiff now insists he has breached. The petition as filed treated the sale as unexecuted, the goods as having been retained, and the title thereto as remaining in the vendor; the wrong alleged consisted solely in the breach by the vendee of his original contract to purchase; and the prayer for damages was measured by the difference between the contract price and the market price at the time and place for delivery. There is not a fault, flaw, or deficiency in this declaration. By the amendment the plaintiff pleads facts in no wise " involved in the cause of action which was evidently originally intended to be declared upon." It now treats the sale as executed, and the title to the goods as having passed to the vendee, and alleges acts and conduct on its own part, not as in due performance of its original contract of sale, but as done in accordance with its optional rights under the statute.

By its amendment the plaintiff sets up a new and distinct claim, which has accrued solely by virtue of its procedure under the statutory law; and invokes the aid of the court in enforcing against the defendant an obligation thus devolving upon it, not by virtue of its contract, but solely by virtue of such procedure. The wrong complained of by the amendment is not the breach of the original contract at all. This could not be, since the vendee is no longer under obligation to take the goods under a con-

tract which has already been thus executed, but is now required to meet the new and distinct obligation — not contractual, but one which has devolved upon it by virtue of and in accordance with plaintiff's optional procedure under the statute.  The wrong now complained of consists solely in the failure of the defendant to pay the difference between the contract price of the goods and the price when resold by the vendor as its agent.  This it has never in any way agreed to do; but, under the facts alleged, the statute makes this its duty.  While the original suit was based upon the breach of an alleged unexecuted private contract, the amendment is based upon a totally distinct wrong, the ground of complaint being that the vendee has failed to comply with a purely statutory obligation, arising only indirectly and remotely out of the original breach, but directly out of the statutory procedure taken for its execution.  Not only are the original cause of action and the one set up by amendment altogether different, but, as has been already shown, they are totally inconsistent.  As is pointed out in the majority opinion, the three code " methods of procedure are extrajudicial, and if the seller adopts one of them, it excludes his right to the others."  This is true because they are not only different, but absolutely inconsistent.  " While one may pursue any number of concurrent and consistent remedies, he will not be permitted, after the choice of one of two or more inconsistent remedies which he might originally have pursued at his option, to change his base and adopt a course wholly inconsistent with the remedy which he first selected."  *Kennedy* v. *Manry, 6 Ga. App.* 816 (1) (66 S. E. 29).  I agree with my colleagues that the extrajudicial mode of procedure taken by the vendor, in selling the goods as the vendee's agent and charging the vendee with the deficit thus arising, consituted its true election; and that, for this reason, its mere mistake in bringing the kind of action it did should not be treated as an election, since at that time it had no choice, and that consequently it should not be precluded from maintaining a subsequent action based on the cause actually accruing under the procedure of its first and real election.

The real line of demarcation between the views expressed in the majority opinion and here seems to lie in the fact that, as I see it, the course and conduct of the vendor in executing the contract, giving the notice, reselling the goods, and charging the defendant

with the deficiency thus arising, entered into and affected its rights, as well as fixed its remedy. In other words, it would seem that the statute provides a choice of distinct and inconsistent methods of procedure, as well as judicial remedies appropriate to the mode adopted. Before the vendor acted as it did, it was perfectly free to do as it tried to do, that is, to bring its common-law action for the breach of the unexecuted contract, and claim as its damages the difference between the contract price and the market price of the goods at the time and place for delivery. It originally had this right, and the remedy appropriate thereto, but it did not exercise it. By pursuing the course it did, however, its acts and conduct entered into and affected not only its remedy, but the cause of action itself. It executed the contract, and no longer could complain that it was unexecuted. It resold the goods, and no longer could complain that the vendee refused to take them. Its rights under the contract became exhausted, and there the matter would have ended, but for the statute, which imposes new rights and new obligations. Code-section 4131 is not merely declaratory of the common law. It does not purport to be. The first of these options existed under the old common-law rule; but the second mode of extrajudicial procedure, when adopted, gives to the vendor new, definite, and distinct rights, and provides for a new and distinct obligation on the part of the vendee. *North Ga. Milling Co.* v. *Henderson Elevator Co.,* 130 *Ga.* 113 (2), 117 (60 S. E. 258, 24 L. R. A. (N. S.) 235). Under the second mode of procedure, the vendor's rights on the one hand, and the vendee's obligations on the other, do not in any wise arise directly out of the contract and its breach, but accrue by virtue of the vendor's conduct under the code procedure, and by that alone. The new right is such as the contract did not give, and the new obligation is such as the contract itself did not impose. Thus, it would seem that the amended suit was not for the breach of the original contract, but was necessarily based solely on the obligations devolving upon the vendee in consequence of the vendor's statutory procedure. The original breach can only be taken as a mere inducement, precedent to the wrong which furnishes the actual ground of complaint. The acts and conduct of the vendor were such as to fix and determine both its rights and its remedy.

The relationship of the parties has much to do with determining the nature and character of the cause of action. Here in the first instance the plaintiff depended for its recovery upon the obligation imposed by the contract; in the latter instance upon an obligation existing not by virtue of the contract, but arising subsequently and solely by virtue of the optional acts and extrajudicial conduct of the plaintiff as taken in accordance with its rights and privileges under the statute law. In the one case the relationship of the parties is governed by the obligation imposed by the contract; in the other the relationship is created and determined solely by a totally distinct obligation growing out of the plaintiff's acts and conduct under the statute law. See, in this connection, *Central of Ga. Ry. Co.* v. *Williams,* 105 *Ga.* 70, 72 (31 S. E. 134). It might be mentioned that the learned and distinguished trial judge, while a member of the Supreme Court, expressed a personal doubt as to the soundness of the rule in the *Williams* case. *Central of Ga. Ry. Co.* v. *Hunter,* 128 *Ga.* 600, 604 (58 S. E. 154). The rule of the *Williams* case, however, remains of force, with whatever applicability it may have, and the criticism made thereof in the *Hunter* case was expressly limited by Mr. Justice Cobb to an expression of a personal doubt.

But my brethren say that the amendment simply asked for the application of a different " statutory measure of relief." If this was all it did, I would agree with them in saying that it was proper and should have been allowed. The authorities cited in the majority opinion are ample to sustain the proposition that the mere measure of damages prayed for in a petition may be so amended as to make it properly conform to the allegations setting forth the wrong actually complained of. But this rule would not have application where the original measure of damages is not only correctly laid, but represents the only legal and proper basis of compensation under the cause of action declared on, and where, in order to amend the measure of damages, it is also necessary to substitute a new, distinct, and totally inconsistent claim. That the measure of damages is different might be immaterial, but not so when the measure of damages is different for the sole reason that the cause of action itself is different. While the remedy grows out of the wrong, or, to state it conversely, while the cause of action gives rise to the remedy, the

terms are not really synonymous. The word "remedy," when properly used, signifies and is limited to the *judicial* means or method whereby the cause of action may be enforced, including also the application of the measure of damages appropriate to the relief sought. If the measure, or even the nature and character of the relief sought, proves inappropriate to the theory, nature, and character of the action as actually declared on, there is nothing to prevent a correction of such a mistake, since the cause of action itself is thereby unaffected. The rule which thus permits an amendment setting up a new and correct measure of damages for the cause of action originally sued on does not, however, permit an alteration of the cause of action itself so as to make it conform to the new measure of damages. Indeed, as was said in the case of *City of Columbus* v. *Anglin,* supra, whether the same measure of damages would be applicable may throw light upon the question as to whether a proposed amendment would have the effect of changing the cause of action. While a mere change of the measure of damages is not in itself prohibited, the fact that an amendment pertaining to the cause itself would render necessary an additional amendment changing the measure of damages may indicate that the ground of complaint itself has been changed. In other words, the fact that one amendment may require another changing the measure of damages can be regarded as a symptom that the first is fatal.

Recurring to the case of *City of Columbus* v. *Anglin,* the following language is there used: "A number of tests have been suggested for determining whether an amendment adds a new cause of action. One general test is said to be, 'whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony.' 1 Enc. Pl. & Pr. 564. Other tests, some of them admittedly fallible, have been suggested in different cases, — as (1) whether the original petition and the amendment would be subject to the same plea (Goddard *v.* Perkins, 9 N. H. 488); (2) whether the same evidence would support both (Scovill *v.* Glasner, 79 Mo. 449); (3) whether the same measure of damages is applicable to both (Hurst *v.* Railway, 84 Mich. 539 [48 N. W. 44]); (4) whether both could have been pleaded cumulatively in the same count

(Richardson *v.* Fenner, 10 La. Ann. 600); (5) whether an adjudication upon one would bar a suit under the other (Davis *v.* Railroad Co., 110 N. Y. 646 [17 N. E. 733]). Of these, the last mentioned is probably the best and most useful, though even it comes back at last to the question whether the cause of action is the same." Applying these rules to the amendment in the instant case, it will be readily seen that it fails to meet a majority of the tests proposed. The original petition and amendment would not be subject to the same plea; neither the same evidence, nor even the same character of evidence, would support both; the measure of damages is not the same, as is necessarily recognized by what has been quoted from the majority opinion; they both could not be pleaded cumulatively in the same count; and finally, even an adjudication that the notice for a resale had not been given, and that the goods had not been resold, would not seem to bar a subsequent action on the breach of the original contract. *Acree* v. *Bandy,* 22 *Ga. App.* 454 (96 S. E. 329). See also the following cases, as bearing upon the question generally: *Baldwin* v. *Western Union Tel. Co.,* 93 *Ga.* 692 (2) (21 S. E. 212, 44 Am. St. R. 194); *Horton* v. *Smith,* 115 *Ga.* 66 (41 S. E. 253); *Steele Lumber Co.* v. *Laurens Lumber Co.,* 98 *Ga.* 329, 331 (10) (24 S. E. 755).

The gist of all that has been here said is based upon the theory that the amendment did not merely seek to apply a new measure of damages appropriate to the cause originally pleaded, but that it sought to plead new facts, setting up a new, distinct, and inconsistent right, arising not under the contract but by virtue of the mode of procedure taken under the statute; that a new and distinct statutory obligation was thus created, which the contract itself did not impose; that the new wrong actually complained of lay solely in the failure of the defendant to meet this, his new obligation, imposed not by the contract, but growing out of the statutory procedure; that the only remaining judicial remedy which the plaintiff now had was not to enforce the contract already executed, but to enforce the new statutory obligation, into which all remaining duties of the vendee had been merged; and that, since the original suit proved wholly futile, the new, different, and totally inconsistent cause of action could not be grafted thereon by amendment.