27422. BROWN *v.* BOYD *et al.*

Decided May 17, 1939.   Rehearing denied June 1, 1939.

174

*Beck, Goodrich & Beck, Howell & Post,* for plaintiff.

*Claude Christopher, E. O. Dobbs, Morgan S. Canley,* for defendants.

PER CURIAM. The contract between the owners of the property and the planing-mill company provided as follows: "Contractors will furnish all material and do all work as provided in plans and specifications, except where specifically noted to the contrary. . . This contract does not include any gas piping or the installation of any gas fixtures. Contractors will omit garage floor, the housing of treads, risers, and stringers on stair, and the painting of plastered walls." The foregoing provisions of the contract demand the interpretation that the items excepted from the contract were items called for by the plans and specifications. It would be inferable that some one would be employed by the owners to do the work so excepted. It would have been meaningless and absurd to make exceptions of items not included in the plans and specifications. In these circumstances it was a question for a jury to determine whether one who was to · do part of the excepted work should reasonably have been expected upon the premises by the planing-mill company. Included in this question is the question whether the excepted work could have been done without interference with the work of the planing-mill company while it was engaged in its part of the work. It can not be said, as a matter of law, that the contractor had exclusive possession of the premises and that the deceased was a trespasser. Under the allegations of the petition it is a jury question whether the contract, the exceptions, the nature of the work to be done by the various parties, and the other circumstances created a situation in which the owner had the right to send the deceased upon the premises for the purposes alleged before the contractor completed its work, and whether under the circumstances the contractor was reasonably bound to anticipate that this work would be done. The petition as amended set forth a cause of action against all three defendants. The allegations do not show, as a matter of law, that the deceased could have avoided the negligence by the use of ordinary care, or that his injury, as a matter of law, was due to his own negligence.

*Judgment reversed. Stephens, P. J., and Felton, J., concur. Sutton, J., dissents.*

SUTTON, J., dissenting. The controlling question in the present case is whether or not the deceased, at the time of his death by electrocution, was an invitee, express or implied, of the contractor, the Barnesville Planing-Mill Company. "1. 'Where the owner or.

occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe.' Code of 1933, § 105-401. 2. 'To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character;' the duty of the owner or occupier of the premises being merely not wilfully or wantonly to injure him by deliberate act, or by negligence in permitting some extraordinary concealed danger to exist and failing to warn him thereof. *Mandeville Mills* v. *Dale, 2 Ga. App.* 607, 610 (58 S. E. 1060) ; *Rollestone* v. *Cassirer, 3 Ga. App.* 161, 166-172 (59 S. E. 442). 3. It is well settled that in order for a visitor to occupy the status of an *implied* invitee, as distinguished from a mere licensee, 'he must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant.' *Central of Ga. Ry. Co.* v. *Hunter,* 128 *Ga.* 600, 604 (58 S. E. 154) ; *King* v. *Central of Ga. Ry. Co.,* 107 *Ga.* 754, 760 (33 S. E. 839) ; *Jones* v. *Asa G. Candler Inc.,* 22 *Ga. App.* 717, 719 (97 S. E. 112) ; all quoting with approval from Plummer *v.* Dill, 156 Mass. 426 (31 N. E. 128, 32 Am. St. R. 463). Like rulings as to implied invitees have been made in *Crossgrove* v. *Atlantic Coast Line R. Co.,* 30 *Ga. App.* 462 (118 S. E. 694) ; *Petree* v. *Davison-Paxon-Stokes Co.,* 30 *Ga. App.* 490, 492 (118 S. E. 697) ; *McCall* v. *McCallie,* 48 *Ga. App.* 99, 101 (8) (171 S. E. 843)." *Hall* v. *Capps,* 52 *Ga. App.* 150 (182 S. E. 625).

The case seems to be predicated on the theory that the deceased was an invitee of the owners, that because of that status he was due from the defendants the exercise of ordinary care, and that their negligence brought about his death. But an invitation from the owners, if not in control and possession of the premises, would not of itself place upon the contractor, in control and possession, the duty to exercise ordinary care toward the owner's invitee where the exclusive occupier does not by express or implied invitation

induce or lead such person to come upon the premises for a lawful purpose. It clearly appears that the Barnesville Planing-Mill Company, under a contract executed with the owners of the lot in question, was in possession and control thereof for the purpose of erecting a residence for such owners. In the absence of any allegation that the owners retained any control or possession of the premises pending the execution of the contract, such control and possession must be treated as being exclusively in the occupier. *Newburn* v. *Healey Real Estate Co.*, 17 *Ga. App.* 217, 225 (86 S. E. 429); *Central of Ga. Ry. Co.* v. *Lawley*, 33 *Ga. App.* 375, 377 (4) (126 S. E. 273). The plaintiff contends, however, that inasmuch as the contract stipulated that "this contract does not include any gas piping or the installation of any gas fixtures," the contractor was thereby put on notice that exclusive possession was not being given the contractor, that the owners might contract with other parties for the installation of the gas piping or fixtures, and that the duty rested upon the contractor or occupier of using ordinary care towards any person who might come upon the premises under a contract with the owners, and that his presence might reasonably be expected. This contention can not be upheld. For aught that appears from the petition or contract, no such work was to be done by anybody. The contract refers to plans and specifications, but it is nowhere intimated that any contract was to be let for gas piping or installation of gas fixtures. Conceivably the house might be erected without reference to any gas consumption. The petition, construed most strongly against the pleader, would require a conclusion that no such work was to be done. Certainly there is no suggestion that any gas piping or fixtures were to be installed during the time that the contractor was in possession; and it is not alleged that any of the defendants was notified by the owners or anybody that they might expect any person to be on the premises during the time that the contractor was erecting the house.

The petition alleges that on July 9, 1936, the deceased was in the employment of a gas company for the purpose of installing and working on gas pipes under the house in pursuance of a contract for such work between the gas company and the owners, that such work was of mutual interest to the gas company and the owners, and that the deceased was an invitee. This allegation, in the ab-

sence of supporting facts, could not be extended to mean that he was also an invitee of the defendants; and as it is elsewhere alleged that he was the invitee of the owners and the gas company, he must be deemed an invitee of those only. There is no allegation that the deceased was invited by any of the defendants to come upon the premises. So far as the petition shows, he had not notified any of the defendants that he would be there, and it is not shown that he had requested permission to be there. The building was not to be turned over to the owners until the work had been approved by representatives of the Federal Housing Administration, according to the contract; and the allegation that the electric wiring had not been completed shows that the contractor had not released control and possession. There is no allegation that puts the deceased in the position of an invitee, express or implied, or even of a licensee. He was clearly a trespasser, to whom the only duty owed by the defendants was not wilfully and wantonly to injure him by deliberate act, or by negligence in permitting some extraordinary concealed danger to exist and failing to warn him thereof after his presence became known. The nearest the petition comes to alleging notice is the statement that defendants "knew and should have known" that persons would work under the house in installing the gas. It charges, and the brief of counsel seems to rely mainly on, constructive notice, and not actual notice that the deceased was upon the premises. But even if it were doubtful whether the petition charges actual or constructive notice, "the petition as a whole must set up such a state of facts as prima facie will show a duty (arising from the relationship existing between the parties as asserted, or from the particular circumstances surrounding the transaction) that the defendant or his agent should have known. In other words, to state it differently, in that class of cases in which the duty of anticipation is normally absent, the plaintiff, in order to assert a valid cause of action, must state unequivocally that the defendant had *actual* knowledge, or else must set up such a state of facts and circumstances as would take the case out of the normal, and raise the duty where it otherwise would not exist." (Italics mine.) *Pacetti* v. *Central Railway Co.*, 6 *Ga. App.* 97, 101 (64 S. E. 302). As shown above, the petition does not do this. It does not, by the allegations of facts and circumstances, show either actual knowledge of the presence of the

deceased or a duty to anticipate his presence, and it does not charge that the defendants wilfully and wantonly injured him. No cause of action was set forth against any defendant, and the court properly sustained the general demurrers.